# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00565-CV

**Bernard Majeski, Appellant**

**v.**

**Estate of Sarah Bishop Majeski, Deceased, Appellee**

## FROM THE COUNTY COURT AT LAW OF COMAL COUNTY
## NO. 2000-PC-0228, HONORABLE BRENDA CHAPMAN, JUDGE PRESIDING

## **O P I N I O N**

Geraldine Wesch is the daughter of the decedent, Sarah Bishop Majeski ("Bishop"), and appellant Bernard Majeski was Bishop's husband for more than twenty years. After Bishop's death, a dispute arose between Wesch, as administrator of Bishop's estate, and Majeski. Both sought control of a tract of land owned by Bishop before her marriage and on which she and Majeski lived and worked. Majeski claimed a homestead right as Bishop's surviving spouse, *see* Tex. Const. art. XVI, § 52, and Wesch argued that the rental of portions of the property defeated Majeski's homestead rights. The trial court granted summary judgment in favor of Wesch, and Majeski appeals. We reverse the judgment and remand the cause to the trial court for further proceedings.

Before marrying Majeski, Bishop acquired as her separate property a 5.851-acre tract of land in Schertz, Texas. Bishop operated a bar and pool hall, called the Bishop Center, on the property, and lived in the same building. After she married Majeski, they lived in and operated the

Bishop Center together. A parking lot lies in front of the Bishop Center, and behind it is a yard and a fence that separates the rest of the property. On the property behind the fence are several mobile homes and rental homes, some of which are uninhabitable, several mobile home lots, junk cars, pieces of equipment, a service station, and a billboard. Both before and during the marriage, several of the structures behind the fence were rented to third parties.

Bishop died intestate in February 2000, survived by Majeski, Wesch, and two other adult children from a previous marriage. Wesch was appointed independent administrator of Bishop's estate and filed an inventory of the estate, listing the 5.851 acres as Bishop's separate property and stating that there were no outstanding claims against the estate. When Wesch informed Majeski that she would begin collecting payments from the rental properties, Majeski sought a temporary restraining order seeking to have Wesch barred from interfering with Majeski's use of the property and from exercising authority or management over the property. Majeski also sought a judgment declaring the 5.851 acres, including any improvements, rental properties, and businesses, to be Majeski's homestead, claiming a life estate in the property as Bishop's surviving spouse. The trial court granted a temporary restraining order but later, faced with competing motions for summary judgment filed by Majeski and Wesch, granted summary judgment in Wesch's favor finding that Majeski's homestead consisted only of the Bishop Center, the fenced yard behind the building, and the parking lot. The remainder of the property behind the fence was found not to be his homestead because it was not used for homestead purposes or to exercise a business or calling.

Majeski appeals, arguing that he is entitled to claim the entire tract as his homestead and that Wesch's motion did not assert specific grounds for summary judgment. Wesch asserts that

2

the order from which Majeski appeals is interlocutory. We hold that the order was final and appealable and agree that Majeski established that the Bishop Center and its surrounding parking lot and yard were his homestead. We hold that there is a question of fact as to the homestead status of the remaining property behind the fence, reverse the trial court's granting of summary judgment in Wesch's favor on that issue, and remand the cause to the trial court for further proceedings.

### Is the Trial Court's Order Final and Appealable?

Wesch filed her administrator's inventory in the trial court as part of the probate of Bishop's estate. After Wesch contacted Majeski to state she would be taking control of the property beyond the fence, Majeski sought a declaration that the entire property was his homestead. Wesch countered, asking the court to determine what portion of the property was Majeski's homestead. She also asked the court to declare "the value and character of all items of personal property" and what assets should be given to Majeski as Bishop's surviving spouse and to deduct from Majeski's share of the estate "the value of all assets not accounted for which [were] in his possession." Both sides moved for summary judgment on the issue of the homestead status of the property. Wesch asserts that the trial court's order was not a final order because the court did not address her counter-petition requests related to the other assets held by Majeski. We disagree.

We may only consider appeals from final and appealable orders or from interlocutory orders over which we are given statutory jurisdiction. *See Stary v. DeBord*, 967 S.W.2d 352, 352-53 (Tex. 1998). The probate code grants appellate courts jurisdiction over "[a]ll final orders of any court exercising original probate jurisdiction." Tex. Prob. Code Ann. § 5(g) (West Supp. 2004-05). This has been interpreted to mean that we may consider an appeal from an order that, while not a

3

final disposition of a probate matter consisting of a continuing series of events, "adjudicate[s] conclusively a controverted question or substantial right." *Logan v. McDaniel*, 21 S.W.3d 683, 688 (Tex. App.—Austin 2000, pet. denied). If no express statute declares a phase of a probate proceeding to be final and appealable, we must consider whether the order is part of a proceeding that left unresolved issues or whether the order "concluded a discrete phase" of the proceedings. *Id*. at 688-89.

Once an administrator of an estate files an inventory and list of approved claims, a surviving spouse must seek to have "exempt property" excluded and set aside for the spouse's use. Tex. Prob. Code Ann. § 271 (West 2003). The only dispute at issue at this stage of the probate proceeding was the homestead status of the property. Although Wesch asserted claims related to other assets, those questions were separate from the homestead issue. The trial court's order made a final resolution of the homestead issue as to the entire tract of land. Therefore, we hold that the order "concluded a discrete phase" of the proceedings and is final and appealable. *See Logan*, 21 S.W.3d at 689. We overrule Wesch's motion to dismiss the appeal for lack of jurisdiction.

*Homestead Status of the Property*

**Standard of Review**

Majeski moved for a "traditional" summary judgment under rule 166a of the rules of civil procedure, asserting that the evidence established that he was entitled to judgment as a matter of law that the entire 5.851 acres should be considered his homestead. *See* Tex. R. Civ. P. 166a(c). Wesch countered with a motion for summary judgment asserting that the evidence established as a

4

matter of law that Majeski cannot claim the entire tract as his homestead and a "no-evidence" motion, asserting that there was no evidence to prove Majeski's case. *See* Tex. R. Civ. P. 166a(i).

A "traditional" motion for summary judgment is properly granted only when the movant establishes that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991); *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.). A defendant seeking summary judgment must negate as a matter of law at least one element of each of the plaintiff's theories of recovery or plead and prove as a matter of law each element of an affirmative defense. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

A party seeking a "no-evidence" summary judgment, on the other hand, does not bear the burden of establishing her right to judgment by proving a defense or claim, but instead asserts that there is no evidence of one or more essential elements of a claim on which the opposing party will have the burden of proof at trial. Tex. R. Civ. P. 166a(i); *Holmstrom*, 26 S.W.3d at 530. If the nonmovant produces more than a scintilla of probative evidence raising a genuine issue of material fact as to an essential element on which he has the burden of proof, a no-evidence summary judgment is improper. Tex. R. Civ. P. 166a(i); *Holmstrom*, 26 S.W.3d at 530.

In reviewing the granting of a summary judgment, we take as true evidence favorable to the nonmovant, making every reasonable inference and resolving all doubts in the nonmovant's favor. *Centeq Realty*, 899 S.W.2d at 197. If both parties move for summary judgment, we determine all questions presented and render the judgment the trial court should have rendered. *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997). An interested party's testimony,

5

whether live or through an affidavit[1], may only be used as summary judgment evidence if it is uncontroverted, clear, positive, direct, credible, free from contradiction, and susceptible to being controverted. Tex. R. Civ. P. 166a(c); *Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex. 1997). Summary judgment is improper if based on testimony by an interested witness that does not meet all of the above requirements. *See Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989).

The Texas Constitution provides special protections for homestead property beyond the protections given to other types of property. *See* Tex. Const. art. XVI, § 50. A homestead is a constitutionally created legal interest that protects a property from all but a few specifically enumerated kinds of liens that may be imposed against a homestead. *Heggen v. Pemelton*, 836 S.W.2d 145, 148 (Tex. 1992). Courts must liberally construe constitutional and statutory homestead provisions to protect the homestead. *Whiteman v. Burkey*, 282 S.W. 788, 789 (Tex. 1926); *State ex rel Texas Dep't of Mental Health & Mental Retardation v. Ellison*, 914 S.W.2d 679, 685 (Tex. App.—Austin 1996, no writ). When a spouse dies, the surviving spouse retains the full homestead rights that the couple enjoyed before the death of the spouse. *Riley v. Riley*, 972 S.W.2d 149, 154 (Tex. App.—Texarkana 1998, no pet.); *see* Tex. Const. art. XVI, § 52; Tex. Prob. Code Ann. §§ 282, 283 (West 2003). Even if the property was the deceased spouse's separate property, the surviving spouse may continue to use and occupy the property as long as he does not abandon the homestead. Tex. Const. art. XVI, § 52; Tex. Prob. Code Ann. § 282; *Copeland v. Tarrant Appraisal Dist.*, 906

---

[1] An affidavit must be based on the affiant's personal knowledge and must state that the recited facts are true. *Humphreys v. Caldwell*, 888 S.W.2d 469, 470 (Tex. 1994); *see* Tex. R. Civ. P. 166a(f). Any qualification of the affiant's personal knowledge will invalidate the affidavit. *See Humphreys*, 888 S.W.2d at 470-71; *Geiselman v. Cramer Fin. Group, Inc.*, 965 S.W.2d 532, 537 (Tex. App.—Houston [14th Dist.] 1997, no pet.).

S.W.2d 148, 151 (Tex. App.—Fort Worth 1995, writ denied). Once property has been designated as a homestead, it will only lose that character through abandonment, death, or alienation. *See Patterson v. First Nat'l Bank of Lake Jackson*, 921 S.W.2d 240, 246 (Tex. App.—Houston [14th Dist.]1996, no writ) ("Once a homestead right is established, it can only be lost during the claimant's life by abandonment or voluntary conveyance. Moreover, once a homestead has been shown to exist, there is a presumption that the homestead continues in the absence of evidence to the contrary." (citation omitted)); *Farrington v. First Nat'l Bank of Bellville*, 753 S.W.2d 248, 251 (Tex. App.—Houston [1st Dist.] 1988, writ denied); *Long Bell Lumber Co. v. Miller*, 240 S.W.2d 405, 406 (Tex. Civ. App.—Amarillo 1951, no writ).

Generally, whether a piece of property qualifies as a homestead is a fact question. *Brown v. Bank of Galveston, Nat'l Ass'n*, 963 S.W.2d 511, 515 (Tex. 1998); *see Sims v. Beeson*, 545 S.W.2d 262, 264-65 (Tex. Civ. App.—Tyler 1976, writ ref'd n.r.e.) (testimony on issue of homestead raised fact question); *Prince v. North State Bank of Amarillo*, 484 S.W.2d 405, 409-10 (Tex. Civ. App.—Amarillo 1972, writ ref'd n.r.e.) ("a review of all the circumstances indicates that the uncorroborated testimony is not conclusive that the property was a part of the homestead as a matter of law, but presents a fact issue for determination"). Likewise, abandonment of a homestead is a fact question. *Long Bell Lumber*, 240 S.W.2d at 406.

**Summary Judgment Evidence**

The parties submitted as evidence Wesch's affidavit and Majeski's responses to Wesch's request for admissions. Wesch and Majeski agreed that two houses and two mobile homes

7

are currently being rented to tenants; the billboard is rented by a third party; three mobile homes and two houses are vacant and uninhabitable; old cars and other items belonging to Majeski and one of his tenants are located on vacant areas, in a large work/storage area, and in a storage unit.  Wesch averred that the service station is being rented to third parties; that one mobile home lot is being used by Majeski's grandson; and that Majeski uses one of the uninhabitable houses as storage.  Majeski agreed that his grandson lives on a mobile home lot and that the service station is being used by third parties for commercial purposes, but denied that his grandson or the service station tenant is paying rent.  Majeski said the service station tenants instead help around the property.  Majeski also stated that the fence between the Bishop Center and the rest of the property was "temporary."

**Discussion**

The trial court correctly held and Wesch does not dispute that the Bishop Center and its surrounding parking lot and fenced yard qualify as Majeski's urban homestead.  Majeski and his wife lived in and operated the Bishop Center as their livelihood, he continues to do so today, and the operation of the bar requires Majeski's time, attention, and labor.  Thus, Majeski may claim the Bishop Center and its immediate surrounds as homestead.  *See* Tex. Const. art. XVI, § 51; Tex. Prop. Code Ann. § 41.002(a) (West 2000).  The only question, therefore, is whether Majeski is entitled to claim as his homestead any or all of the property beyond the fence behind the Bishop Center.  We hold that the trial court erred in finding that, *as a matter of law*, Majeski was not entitled to claim any of the land behind the fence as his homestead.

8

Before 1999, an urban property owner could claim both a business homestead and a residential homestead.[2] *See Miller v. Menke*, 56 Tex. 539, 550-51 (1881). In 1999, the constitution was amended to do away with the separate urban business homestead. *See* Tex. Const. art. XVI, § 51. Now, a person may claim only one urban homestead up to ten acres in size and consisting of a lot or contiguous lots "used for the purposes of a home, or as both an urban home and a place to exercise a calling or business." *Id*.; Tex. Prop. Code Ann. § 41.002(a); s*ee generally* Christopher John Kern, *Goodbye Texas Urban Business Homestead: An Analysis of the November 1999 Amendment to Article XVI, Section 51 of the Texas Constitution*, 52 Baylor L. Rev. 663 (2000).

As originally proposed, the 1999 amendment would have eliminated the "calling or business" language from the provision. Tex. S.J. Res. 22, 76th Leg., R.S. (1999) (introduced version). The original proposal would have provided homestead protection to property up to ten acres, contiguous, and used for purposes of a home, without addressing the issue of business activities being conducted on the property. *Id*. However, the amendment as enacted retains the old "business or calling" language, which Wesch argues shows a legislative intent to retain the requirements applied to business homesteads before the 1999 amendment.

Texas courts have long defined what qualifies as a "business or calling" when interpreting the original homestead provisions. A calling embraces "all such employments as by course of study or apprenticeship in any of the learned professions, liberal arts, or mechanical occupations, a person has acquired skill or ability to follow, and which has become practically a

---

[2] Formerly, an urban homestead consisted of a "lot or lots amounting to not more than one acre of land" and "used for the purposes of a home, or as a place to exercise the calling or business of the homestead claimant." Tex. Const. art. XVI, § 51 (amended 1999).

9

matter of personal skill." *Shyrock & Rowland v. Latimer*, 57 Tex. 674, 677-78 (1882). A business

occupies a property owner's time, attention, or labor for purposes of profit or improvement. *Id*.

Renting or leasing property has generally not been considered a business or calling, even if rental

income is an individual's sole source of income. *See Mays v. Mays*, 43 S.W.2d 148, 152 (Tex. Civ.

App.—Beaumont 1931, writ ref'd); *Lyon v. Files*, 110 S.W. 999, 1001 (Tex. Civ. App. 1908, no

writ); Angus S. McSwain, *The Texas Business Homestead in 1990*, 42 Baylor L. Rev. 657, 670

(1990). Courts have instead viewed rental property as an investment that does not take up a large

portion of the property owner's time, labor, or attention. *See In re Kang*, 243 B.R. 666, 669 (Bankr.

N.D. Tex. 1999); *C. D. Shamburger Lumber Co. v. Delavan*, 106 S.W.2d 351, 357 (Tex. Civ.

App.—Amarillo 1937, writ ref'd). Temporarily renting homestead property to another, however,

does not change the property's homestead character. Tex. Const. art. XVI, § 51.

Assuming that the traditional business homestead requirements apply under the new

constitutional provision,[3] the evidence does not establish as a matter of law that none of the property

---

[3] It seems contrary to the requirement of liberal homestead interpretation to hold that the amended provision continues to impose archaic requirements on the type of commercial use made of property. *See Hughes v. Team Bank* (*In re Hughes*), 172 B.R. 205, 210 n.4 (Bankr. N.D. Tex. 1993) (observing that restrictive view of "business" used more than a century ago has evolved into more modern conception of business); *see also Postal Sav. & Loan Ass'n v. Powell*, 47 S.W.2d 343, 352 (Tex. Civ. App.—El Paso 1931, writ ref'd) (stating that "calling" and "business" in homestead provisions were broadly defined and meant to "embrace every legitimate avocation in life by which an honest support for a family may be obtained"). Case law excluding rentals from homestead protection, generally dating to the early 1900s, both seems to comprehend a different business environment than the one that has evolved and concerns the earlier constitutional exemption, which provided two kinds of urban homestead. *See Hughes*, 172 B.R. at 210 n.4 (quoting *In re Krug*, 102 B.R. 98, 99 n.2 (Bankr. W.D. Tex. 1989)) ("It is unlikely the restrictive interpretation of the term 'business' espoused 'by the Justices of the Texas Supreme Court a century ago contemplated the dramatic shift of service-oriented paper shuffling that marks so much of modern day callings.'"). Now that the constitution permits only one urban homestead combining business and residence, and

behind the fence was Majeski's homestead. Majeski and his wife claimed and received a homestead exemption on the entire 5.851 acres, and the evidence does not show that anything has changed in the use of the property since Majeski's wife's death. The evidence shows that some portion, indeed a substantial portion, of the land behind the fence is either not in use at all or is used by Majeski for storage of his personal items and for his own use. The evidence is unclear about exactly what percentage of the property behind the fence is actually rented. Majeski acknowledged renting four housing units, but stated that several of the other houses or mobile homes are not rented and in fact are uninhabitable. Majeski contradicted Wesch and asserted that the service station was used by a third party who did not pay rent.

Under the trial court's determination, the fence that Majeski and his wife erected between the Bishop Center and the remainder of the lot is the dividing line between what is homestead and what is not.[4] This designation is arbitrary and begs the question of whether the line

given the modern form "business" has taken, it is not clear that drawing a distinction between rental income and income earned by a traditionally defined "business" or "calling" continues to be useful.

Instead, it is a reasonable argument that the provision was changed to assure that land owners would not lose homestead status if they used their residences for commercial purposes. Under this view, a person could claim property used as a home, whether or not it is also used for business, calling, or even investment purposes. *See Hearings on Tex. S.J. Res. 22 and S.B. 496 Before the Senate State Affairs Comm.*, 76th Leg., R.S. (Mar. 11, 1999) (Some owners discovered their business homesteads only when they sought to use property as collateral; Stewart Title Guaranty Company representative stated that amendment "won't affect your ability to have a business homestead where you have your home and it won't let the business aspect of your ten acres destroy your residential homestead. So it has two purposes.").

[4] Under Wesch's argument, if Majeski had lived and worked in the Bishop Center and left the remainder of the property vacant, the full 5.851 acres would be considered his homestead, but his renting of part of the land divests him *as a matter of law* of his homestead rights to the *entire portion* of the property beyond the fence. Further, we note that Wesch asserted that Majeski was committing "waste" by allowing some of the structures to fall into disrepair and leaving vacant land

11

would shift if, on a whim, the "temporary" fence had been placed ten feet in either direction or had been torn down altogether. Further, Majeski's statements contradict some of Wesch's assertions, thus raising fact issues, and even the uncontradicted evidence does not establish as a matter of law that Majeski's homestead interest in all of the land behind the fence should be forfeited. Instead, there is a question of fact as to what portion of the tract, some of which is used by Majeski for storage or is vacant, is deserving of homestead protection.

It was Wesch's burden to show exactly what portions of the property, if any, were not subject to Majeski's claims of homestead. *See Canales v. Oliver*, 322 S.W.2d 411, 413 (Tex. Civ. App.—San Antonio 1959, writ ref'd n.r.e.) ("appellant, having undertaken to show that portions of said lot had been abandoned for homestead purposes and converted to the use of the rent houses, was charged with the burden of proving just what part of the homestead had been abandoned").[5] Wesch has not carried that burden, nor has she shown as a matter of law that Majeski may not claim any of the property lying behind the fence as homestead. *See Brown*, 963 S.W.2d at 515. We therefore

---

that would be suitable for mobile homes. It seems that Wesch would punish Majeski for failing to fully rent the property and yet deprive him of his homestead rights if he did.

[5] *See also City of Amarillo v. Loden*, 22 S.W.2d 969, 970 (Tex. Civ. App.—Amarillo 1929, no writ) ("If the property or any part of it was rented and thereby abandoned, it rested on the plaintiff to show the extent of such abandonment. There is no proof showing the size of the building which was rented, no proof of a fence or other means of segregating it from the balance of the lot, and nothing in the record to enable the trial court to fix any arbitrary line by which the property comprising the homestead could be separated from the rented property. Hence, in the absence of such proof, the trial court could not have decreed that any part of said lot was subject to the plaintiff's lien by reason of such abandonment by renting."). Here, there was a fence, an "arbitrary line," but the area behind the fence was not used exclusively for rental purposes and instead was used in part by Majeski for his personal purposes.

reverse the trial court's order as far as it finds that Majeski may not claim any of the land beyond the fence as his homestead.

*Conclusion*

We hold that the trial court's order is final and appealable and we overrule Wesch's motion to dismiss Majeski's appeal. We affirm the portion of the trial court's order finding that Bishop Center and its surrounding parking lot and yard are Majeski's homestead. We reverse the order so far as it finds that the property beyond the fence is not subject to homestead protections, and we remand the cause to the trial court for further proceedings.[6]

_____

David Puryear, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed in Part; Reversed and Remanded in Part

Filed: February 3, 2005

---

[6] Having held that there is a question of fact as to the homestead status of the portion of the property that lies beyond the fence, we need not address Majeski's issue asserting that Wesch did not properly raise the grounds on which the trial court relied in granting summary judgment.