**Mary Lou WILCOX and Michael L. Roscom, Appellants,**

v.

**John T. MARRIOTT, Rebecca A. Marriott, and Guy Williams, Sheriff, Montgomery County, Texas, Appellees.**

**No. 09–05–469 CV.**

Court of Appeals of Texas, Beaumont.

Submitted March 22, 2007.

Decided July 12, 2007.

---

Lester R. Buzbee, III, Humble, for appellants.

R. Dwayne Danner, Irving, for appellees.

Before McKEITHEN, C.J., KREGER and HORTON, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

Mary Lou Wilcox and Michael L. Roscom appeal the judgment entered after a jury trial in a suit filed by John T. Marriott and Rebecca A. Marriott to enjoin execution on a judgment Wilcox and Roscom obtained against Daniel Roscom.[1] Wilcox filed the abstract of judgment in Montgomery County on August 4, 1999. Substantial changes to the homestead laws of the State of Texas became effective January 1, 2000. *See* TEX. CONST. art. XVI, § 51; TEX. PROP.CODE ANN. §§ 41.002, 41.005 (Vernon 2000). Roscom sold the approximately 1½ acre property on which he and his wife lived to Marriott after the effective date of the amendments. The jury found that Roscom intended to claim the property as his homestead when he sold it to the Marriotts. The trial court ruled the entire parcel is included in the homestead exemption from forced sale, and that the judgment lien did not attach to the property. Wilcox raises five issues on appeal. We reverse and remand for entry of a new declaratory judgment.

In January 1995, Roscom filed with the appraisal district an application for residential homestead exemption on the property. Virginia Chisum conveyed the property to Daniel Roscom on July 19, 1995, by general warranty deed. Virginia Chisum married Daniel Roscom on July 1, 1998. They lived on the property as their home until the Marriotts purchased the property. Wilcox obtained a $200,000 judgment against Roscom on February 26, 1999. In March 1999, Roscom and his wife took out a home equity loan on the property secured by a .99 acre tract, described by metes and bounds. In the home equity transaction, the Roscoms executed an affidavit that stated the .99 acre tract was their homestead. The documents securing the home equity loan describe the front part of the property as homestead. Wil-

1. For ease of discussion, we refer to Mary Lou Wilcox and Michael L. Roscom as "Wilcox" and refer to Daniel Roscom as "Roscom." The Roscoms are brothers. Daniel Roscom was not joined as a party in the Marriotts' suit to enjoin execution on the judgment. The appellants have not challenged the take nothing judgment granted to Guy Williams in his capacity as Sheriff of Montgomery County.

cox filed an abstract of judgment in Montgomery County on August 4, 1999. Wilcox offered no evidence regarding the indexing of the abstract of judgment and there is no evidence that the abstract of judgment was properly indexed or of the date on which indexing occurred.[2] On January 25, 2000, Roscom transferred the property to the Marriotts by general warranty deed. Although Roscom's spouse signed the HUD settlement statement, she did not join the deed. After paying the balance of the home equity note, Roscom realized approximately $250,000 from the transaction and did not attempt to shield the proceeds from execution. Wilcox did not seize the proceeds in Roscom's possession. On March 1, 2001, a writ of execution issued as to any real estate of Daniel Roscom, and this litigation ensued.

■ The primary issue in this appeal concerns the effect of the 1999 amendments to the homestead provisions in the Texas Constitution and the Texas Property Code. The constitutional amendment expanded the maximum size of an urban homestead from one acre to ten acres. *See* Act of May 21, 1999, 76th Leg., R.S., S.J.R. No. 22, 1999 Tex. Gen. Laws 6603. In integrating the constitutional amendment into the Property Code, the Legislature provided that the changes in the law dealing with the size of the homestead, designation of homestead, and excess acreage apply to execution under a writ of execution issued on or after January 1, 2000, and that a lien on real property acquired before January 1, 2000, is governed by the law in effect on the date the lien was acquired. *See* Act of May 28, 1999, 76th Leg., R.S., ch. 1510, 1999 Tex. Gen. Laws 5231–32. The new definition of "homestead" applies to all homesteads in Texas, whenever created. TEX. PROP.CODE ANN. § 41.002(d).

■ Wilcox contends the change in the law can have no effect on the judgment lien perfected by abstract of judgment, so execution should issue according to prior law. To reach this construction, Wilcox must ignore the unequivocal language that the new law applies to execution under a writ of execution issued on or after January 1, 2000. *See* 1999 Tex. Gen. Laws at 5232, § 7(b). The Marriotts contend the judgment lien did not attach to Roscom's homestead, which extended to the entire property as of January 1, 2000. Because Wilcox did not determine and seize the excess while one existed, the Marriotts contend the entire tract is exempt. To reach this construction, the Marriotts must ignore the unequivocal language that the change in the law does not affect the validity of a lien acquired before January 1, 2000. *See id.*, § 7(c). The trial court resolved the issue by applying the rule that homestead laws are to be liberally construed to effectuate their beneficent purpose. *See, e.g.*, *Woods v. Alvarado State Bank*, 118 Tex. 586, 589–90, 19 S.W.2d 35 (1929). Because the purpose of the law is to protect homesteads from seizure, the trial court's ruling effectuates the purpose of the statute. Nonetheless, the Legislature expressed its intention to continue the prior law for liens perfected before the effective date of the constitutional amendment. *See* 1999 Tex. Gen. Laws at 5232, § 7(c). Generally, "when the property has not become a homestead at the execution of the mortgage, deed of trust or other lien, the homestead protections have no application even if the property later becomes a homestead." *Inwood North Homeowners' Ass'n, Inc. v. Harris*, 736

2. Other than a request for attorney's fees, Wilcox did not file a counterclaim or seek affirmative relief from the trial court.

S.W.2d 632, 635 (Tex.1987). In this case, the property was always Roscom's homestead; it is the homestead protections that did not apply to the entire parcel when Wilcox filed the abstract of judgment.

The execution on a money judgment may be had only upon property of the judgment debtor which is subject to execution by law. TEX.R. CIV. P. 630. Effective January 1, 2000, Roscom's homestead rights expanded to the entire parcel and the new law governed any writ of execution issued in 2000. Thus, regardless of the validity of the judgment lien, the entire property was exempt from execution effective January 1, 2000. As of January 1, 2000, what had been property in excess of the one acre homestead exemption became property within the ten acre homestead exemption and was no longer subject to execution. Whether the change in the law disencumbered the property from the pre-existing lien is another matter. The statutory construction applied by the trial court determined the validity of the lien based upon the homestead law in effect on the date the writ of execution issued. A judgment lien attaches to the non-exempt real property of the judgment debtor when an abstract of judgment is filed and indexed in the county where the property is located. TEX. PROP.CODE ANN. § 52.001 (Vernon 2007). Assuming the filed abstract was properly indexed prior to January 1, 2000, the lien attached to any non-exempt property before the effective date of the amendments. A literal reading of the 1999 Property Code amendments gives Wilcox a lien on Roscom's excess acreage; however,

Wilcox cannot have execution because no writ of execution issued before the homestead exemption expanded to include the entire tract.[3] We sustain issue one in part.

Wilcox groups the following three issues in a single argument. Wilcox contends that the trial court erred in allowing the Marriotts' expert witness to instruct the jury as to the law, that the trial court erred in failing to instruct the jury as requested by Wilcox, and that the jury erred in finding that Daniel Roscom claimed a homestead on the date of sale of the real property. Wilcox argues the expert testimony and the refusal to instruct the jury as requested caused the jury to fail to give proper weight to the testimony of Daniel and Virginia Roscom.

■ Both parties provided expert witness testimony regarding the establishment, assertion, and abandonment of the homestead protections of the State of Texas. Their specialized knowledge assisted the jury in determining the factual issue in dispute, and as such was generally admissible. See TEX.R. EVID. 702. Wilcox argues the Marriotts' expert misstated the law when he testified that "[o]nce your homestead is established, you can either sell it, you can die, or you can abandon it." This legal principle has been stated in caselaw several times, including the opinion on an earlier appeal in this litigation, and Wilcox presents no authority to establish that the expert incorrectly stated the applicable law. See Wilcox v. Marriott, 103 S.W.3d 469, 472 (Tex.App.-San Antonio 2003, pet. denied);[4] see also Florey v.

3. In hindsight, the enacting legislation appears somewhat incongruous, but judgment lien holders had from the date of the election until the new year to obtain writs of execution, and the Legislature could have determined that period of time would be sufficient to effect the transition to the new homestead

protections. See 1999 Tex. Gen. Laws at 5232, § 7(b), (c).

4. In an excellent opinion delivered pursuant to a docket equalization order, the San Antonio court held that a fact question regarding Roscom's credibility precluded summary judgment for Marriott. Id. at 476. It ap-

*Estate of McConnell,* 212 S.W.3d 439, 444–45 (Tex.App.-Austin 2006, pet. denied); *Majeski v. Estate of Majeski,* 163 S.W.3d 102, 107 (Tex.App.-Austin 2005, no pet.); *Duran v. Henderson,* 71 S.W.3d 833, 842 (Tex.App.-Texarkana 2002, pet. denied); *Patterson v. First Nat'l Bank of Lake Jackson,* 921 S.W.2d 240, 246 (Tex.App.-Houston [14th Dist.] 1996, no writ); *Long Bell Lumber Co. v. Miller,* 240 S.W.2d 405, 406 (Tex.Civ.App.-Amarillo 1951, no writ); *Garrard v. Henderson,* 209 S.W.2d 225, 229 (Tex.Civ.App.-Dallas 1948, no writ).

██ The trial court refused four instructions requested by Wilcox: (1) "Claiming property as a 'homestead' for tax purposes or to obtain a home equity loan does not, as a matter of law, make the property 'homestead'."; (2) "A person may claim property as 'homestead' today and refuse to claim the same property the next day. No one can force or require a person to exercise their right to claim a 'homestead'."; (3) "A 'Homestead exemption' does not arise as a matter of right. It is an exemption or right that may be waived at the option of the party entitled to the exemption right."; and (4) "Pursuant to Tex. Constitution, Art. XVI, § 50, the legislature enacted Texas Family Code section 5.001, which provides that a spouse may not 'sell, convey or encumber [a] homestead without the joinder of the other spouse' even if the homestead is the separate property of the other spouse." "When a trial court refuses to submit a requested instruction, the question on appeal is whether the request was reasonably necessary to enable the jury to render a proper verdict." *Tex. Workers' Comp. Ins. Fund v. Mandlbauer,* 34 S.W.3d 909, 912 (Tex.2000) (op. on reh'g); *see* Tex.R. Civ. P. 277. "Further, for an instruction to be proper, it must (1) assist the jury; (2) accurately state the law; and (3) find sup-

port in the pleadings and the evidence." *Mandlbauer,* 34 S.W.3d at 912; *see* Tex.R. Civ. P. 278. "The trial court has great latitude and considerable discretion to determine necessary and proper jury instructions." *Louisiana–Pacific Corp. v. Knighten,* 976 S.W.2d 674, 676 (Tex.1998). In this case, the trial court could have reasonably determined that the requested instructions unfairly commented on the weight of the evidence. *See* Tex.R. Civ. P. 277.

██ Wilcox refers the Court to the Roscoms' denials that they intended to claim the property as exempt in January 2000, and contends this evidence is "direct, clear and positive" such that the jury could not "deny proper weight to undisputed testimony" that Wilcox contends is against the best interest of the witness. On April 27, 2001, Roscom signed an affidavit that stated that he did not claim the property as exempt from any judgment or attachment lien at the time he sold it to the Marriotts and that at the time of the sale he was not asked if the property was homestead or exempt. On January 25, 2001, Daniel Roscom signed an affidavit that "[t]o the best of Seller's knowledge, no loans or liens (including federal or state liens and judgment liens) of any kind on such property [sic] during Seller's ownership except [the home equity mortgage]." In his deposition, Roscom stated, "I think at the signing of this document at the sale of the house, I did not consider it homestead." He also admitted that he did not consider any other property to be his homestead on the date of the sale, that he was living on the property on that date, that at no point prior to signing the deed did he abandon the property or leave it with no intention to return, and that he never filed any documents with the taxing authorities to remove the homestead exemption from his home. Roscom claimed

pears the parties had not yet identified the primary issue now raised on appeal.

he could not recall if anything changed between the time he took out a home equity loan and the sale of the property. Virginia Roscom admitted in her deposition that when she took out the home equity loan, she signed a statement that the property was her homestead. She also admitted that she resided on the property from 1994 until she moved out in January 2000, she never lived anywhere else, and never abandoned the property. Virginia Roscom testified that she considered the property to be her homestead between 1994 and 2000, but she did not call it her homestead because she had deeded the property to Daniel Roscom. With the satisfaction of a $200,000 judgment against one of them at issue in the litigation, the Roscoms were not disinterested witnesses. Their testimony was inconsistent and incredible rather then clear and unequivocal as Wilcox argues. The jury heard evidence that the Roscoms lived on the property and treated it as their homestead to the exclusion of all other property through the date of the sale to the Marriotts. "The possession and use of real estate by one who owns it, and who, with his family, resides upon it makes it the homestead of the family in law and in fact." *Lifemark Corp. v. Merritt*, 655 S.W.2d 310, 314 (Tex. App.-Houston [14th Dist.] 1983, writ ref'd n.r.e.). The record neither demonstrates that the jury was incorrectly instructed on the law, nor that uncontroverted testimony refuted the homestead character of the property. We overrule issues two through four.

The final issue contends that the Marriotts "are not entitled to equitable subrogation."[5] Wilcox cites no authority in support of this issue, and argues only that the

Marriotts' title company had notice of the judgment. The issue is inadequately briefed. *See* Tex.R.App. P. 38.1(h); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex.1994). Because we reverse the trial court's declaratory judgment regarding attachment of the judgment lien against the property in excess of one acre, the trial court may reconsider the issue of equitable subrogation on remand.

Because the abstract of judgment could attach to that part of the property which exceeds one acre, we hold that the trial court erred in declaring that the abstract of judgment did not attach to or encumber any portion of the property. We reverse the trial court's judgment, and remand the cause to the trial court for entry of a new declaratory judgment consistent with this Opinion.

REVERSED AND REMANDED.

---

5. The Marriotts sought a declaratory judgment that they are equitably subrogated to the lien position of the home equity lender, and they offered evidence at trial to support the pleading. The closing documents establish that the proceeds of the purchase price paid by the Marriotts paid off the balance of the home equity note secured by a deed of trust that pre-dated the abstract of judgment. The judgment does not declare the Marriotts' rights to equitable subrogation.