# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00384-CV

**Shoreham Oil & Gas Company, Inc., A South Dakota, USA Foreign Business Corporation, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT NO. D-1-GV-05-000840, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## O P I N I O N

The State of Texas brought an action against Shoreham Oil & Gas Company, Inc. to recover state funds expended by the Railroad Commission of Texas in plugging a gas well. The district court granted the State's motion for partial summary judgment, finding Shoreham was the operator of the well as a matter of law during the relevant time period. Based on the partial summary judgment, the district court did not permit Shoreham to present any evidence at trial that it was not in possession and control of the well during the relevant time period and that, therefore, it was not liable for any plugging expenses incurred by the Commission. At the conclusion of the trial, the district court rendered judgment on a jury verdict in favor of the State. Shoreham appeals the district court's ruling on the partial summary judgment. We affirm.

*Factual and Procedural Background*

In April 1996, Shoreham Oil & Gas Company became the lessee of the gas well identified as "State Tract 288 (148811) Lease, Well No. 1, Redfish Reef, SW. (Vicksburg) Field, Chambers County, Texas" (the "Well"). The Well was located in Galveston Bay on a state-owned tract leased for production by the Texas General Land Office. On October 8, 2004, the GLO notified Shoreham by letter that its lease was forfeited based on Shoreham's failure to make royalty payments on the production of oil and gas under the lease. In the letter, the GLO ordered Shoreham to cease operations and vacate the premises. Shoreham disputed the calculations of the amount owed and sought to have the forfeiture of the lease rescinded. The GLO agreed to rescind the forfeiture, provided that Shoreham sold a majority interest in the lease to Layton Energy, Inc.—with which Shoreham had recently been in negotiations for the sale of an interest in the Well—and provided that Layton became the operator of the Well. Shoreham, in turn, executed a Purchase and Sale Agreement that would have sold sixty percent of the lease to Layton.

However, on December 9, 2004, prior to the closing of the sale and transfer of operator status to Layton, it was discovered that the Well was leaking gas and condensate. The Railroad Commission was not satisfied with Shoreham's subsequent efforts to stop the leak and, on December 21, 2004, took control of the Well and ultimately plugged it. On April 5, 2005, the State instituted litigation against Shoreham to recover the state funds spent by the Commission to control, clean up, and plug the Well.

The State filed a motion for partial summary judgment, in which the State sought judgment as a matter of law that Shoreham was the "operator" responsible for plugging expenses and

2

that the Commission was justified in taking over and plugging the Well. The district court granted the State's motion on Shoreham's status as operator of the Well, but denied the remainder of the State's motion. At trial, the jury found that as of December 21, 2004, the Commission was authorized to take over and plug the Well, oil and gas wastes from the Well were causing or were likely to cause pollution of the surface or subsurface water, and Shoreham had assets with which to control or clean up the oil and gas wastes. The jury awarded $386,000 in damages to the State for the expenses incurred. On May 30, 2007, the district court entered final judgment on the jury award, plus pre- and post-judgment interest, court costs, and attorneys' fees.

Shoreham raises a single issue on appeal—that the district court erred in granting the State's motion for partial summary judgment that Shoreham was the operator of the Well for purposes of the statute allowing the State to recover its costs, and this error prevented Shoreham from presenting evidence, arguing to the jury, and submitting a jury issue on Shoreham's responsibility for the plugging expenses on the basis that it was not the "operator." *See* Tex. Nat. Res. Code Ann. § 89.043(f) (West Supp. 2007).

***Discussion***

We review the trial court's partial summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Under Rule 166a(c) of the Texas Rules of Civil Procedure, a summary judgment should be granted only when the movant establishes that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991); *Majeski v. Estate of Majeski*, 163 S.W.3d 102, 106

3

(Tex. App.—Austin 2005, no pet.). In reviewing a grant of summary judgment, we accept as true all evidence favoring the non-movant, making every reasonable inference and resolving all doubts in the non-movant's favor. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

Texas law places the responsibility for plugging a gas well on the operator. *See* Tex. Nat. Res. Code Ann. §§ 89.011, .043, .083 (West Supp. 2007). Shoreham does not dispute that it became the operator of the Well in 1996. Rather, Shoreham takes the position that when the GLO forfeited the lease, Shoreham no longer had the requisite operational control over the Well and, thus, ceased being the actual operator. As a consequence, it would avoid legal responsibility for plugging expenses. Central to our resolution of this appeal is the effect of Shoreham's required filings with the Commission with respect to its status as the operator of the Well.

Shoreham filed a Form P-4 (Producer's Transportation Authority and Certificate of Compliance) with the Commission in April 1996 to designate itself as the Well's operator. The State's motion for partial summary judgment originally relied on this 1996 P-4 to establish that Shoreham was the operator. In its response to the State's motion for partial summary judgment, Shoreham took the position that because the Form P-4 was filed in 1996, Shoreham's operator status depended on the law in effect prior to September 1, 1997. Shoreham argued that prior to September 1, 1997, to determine that Shoreham was the "operator" of the Well, the law required the State to establish that Shoreham was in "physical operation and control" of the Well. Therefore, according to Shoreham, the court could not hold Shoreham responsible for plugging expenses as a matter of law. The State responded with a supplemental filing to which it attached a second Form P-4, which had been filed by Shoreham in October 2000. The 2000 P-4 set out a change in

4

condensate gatherer and a change in gas purchaser and gatherer. The 2000 P-4 also listed Shoreham as the operator. According to the State, because the Form P-4 was filed in 2000, Shoreham's operator status was subject to the law in effect after September 1, 1997, and thus, Shoreham as the operator was responsible for plugging expenses as a matter of law without any additional proof as to whether it was in "physical operation and control" of the Well. In entering partial summary judgment on Shoreham's status as the operator of record of the Well, the district court did not specify whether its ruling was based on the 1996 P-4 or the 2000 P-4.

Shoreham argues on appeal that the State must rely on the 1996 P-4 and that, as a result, there is a fact issue on Shoreham's responsibility for the physical operation and control of the Well, which was not submitted to the jury due to the district court's ruling on Shoreham's status as the operator. The State argues in response that it can rely on the 2000 P-4 and, alternatively, that even if it must rely on the 1996 P-4, under pre-1997 law Shoreham is the operator as a matter of law.[1]

---

[1] Shoreham bases its interpretation of pre-1997 law on the then-existing statutory language, *see* Act of May 30, 1993, 73d Leg., R.S., ch. 882, § 1, 1993 Tex. Gen. Laws 3505, 3505 (defining "operator" as the "person who is responsible for the physical operation and control of a well at the time the well is about to be abandoned or ceases operation") (amended 1997) (current version at Tex. Nat. Res. Code Ann. § 89.002(a)(2) (West Supp. 2007)); pre-1997 case law, *see Railroad Comm'n v. American Petrofina Co. of Tex.*, 576 S.W.2d 658, 659 (Tex. Civ. App.—Beaumont 1978, no writ) (defendant was not a well's operator where it "has never used this well, has no intention of doing so, and in fact did not even know it was on the . . . lease at the time of acquisition"); and the Commission's current regulations, *see* 16 Tex. Admin. Code § 3.14(c)(2) (2008) (Tex. R.R. Comm'n, Plugging) (making the operator's plugging responsibility a *rebuttable* presumption for a well "for which the most recent Commission-approved operator designation form was filed prior to September 1, 1997"). The State bases Shoreham's operator status under pre-1997 law on Shoreham's summary judgment proof failing to raise a fact issue to rebut Shoreham's plugging responsibility as operator. We need not consider the parties' arguments as to pre-1997 law because we determine that the 2000 P-4 governs Shoreham's operator status.

We begin by determining whether the State can rely on the 2000 P-4 to establish Shoreham's liability as the operator of the Well. In making this inquiry, we look first at the language of the applicable statute. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) ("When construing a statute, we begin with its language."). The Texas Natural Resources Code identifies the operator of a well as the "person who assumes responsibility for the physical operation and control of a well as shown by a form the person files with the commission and the commission approves." Tex. Nat. Res. Code Ann. § 89.002(a)(2) (West Supp. 2007). Shoreham initially assumed responsibility for the physical operation and control of the Well pursuant to the 1996 P-4. Although Shoreham concedes it filed another Form P-4 with the Commission in 2000, it claims it did so for purposes other than designating Shoreham as the operator—i.e., for the purpose of changing the designated condensate gatherer and gas purchaser. Shoreham contends that, as a result, its operator status arises solely from the 1996 P-4. However, the statute itself does not refer only to the form on which the operator is *initially* designated. Nor does the statute require the form to be filed for the *purpose* of establishing the operator. The statute merely requires that the form "show" the person to be the operator. *See id.* The 2000 P-4 is an operator-designation form that, in fact, shows Shoreham to be the operator. This satisfies the plain language of section 89.002(a)(2).

Our adherence to section 89.002's plain language and rejection of Shoreham's interpretation of the statute is supported by the administrative construction of the statute. Tex. Gov't Code Ann. § 311.023 (West 2005); *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001) (when statute not ambiguous on its face, courts may nonetheless consider other factors to determine legislative intent). "Construction of a statute by the administrative agency charged with

6

its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute." *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993). The Commission's regulations for plugging responsibility state:

> The entity designated as the operator of a well *specifically identified on the most recent Commission-approved operator designation form filed on or after September 1, 1997*, is responsible for properly plugging the well in accordance with this section and all other applicable Commission rules and regulations concerning plugging of wells.

16 Tex. Admin. Code § 3.14(c)(1) (2008) (Tex. R.R. Comm'n, Plugging) (emphasis added). According to the Commission's regulations, the determination of which rules apply to determine operator status depends on whether "the most recent Commission-approved operator designation form" that identifies the operator was filed before or after September 1, 1997. *See id.* § 3.14(c)(1), (2). This rule is entirely consistent with the language of the statute. Nothing in the statute requires the form to be the *initial* designation of the operator or filed for the *purpose* of designating the operator. Under the regulations, any filing of an operator-designation form that identifies the operator qualifies as a filing establishing well-plugging responsibility. *See id.* This is not inconsistent with the statute.

The Form P-4 is a Commission-approved operator-designation form. A Form P-4 is filed for an individual gas well. By its terms, the Form P-4 must be filed for a new gas well; a reclassification (oil to gas, or gas to oil); a consolidation, unitization, or subdivision; or a change in operator, gatherer, purchaser, purchaser system code, field name, or lease name. The filing of a Form P-4 for a gas well is an indication of an operator's acceptance of responsibility for the physical

7

operation and control of the well. *See Railroad Comm'n v. American Petrofina Co. of Tex.*, 576 S.W.2d 658, 659 (Tex. Civ. App.—Beaumont 1978, no writ) (under pre-1997 law, defendant was not a well's operator where it never used the well and had no intention of doing so). In fact, the 2000 P-4 signed by Shoreham's president included a certification stating, "I acknowledge responsibility for the regulatory compliance of the subject lease, INCLUDING PLUGGING OF WELLS if required under Statewide Rule 14."

Therefore, by requiring that the form establishing an entity as a gas well's operator be a "Commission-approved operator designation form," the Commission's regulations reasonably ensure that an operator's post-1997 activity results in the application of post-1997 law only where the operator is, in fact, indicating that it bears responsibility for the physical operation and control of the well. This approach reflects the stated legislative purpose for the 1997 amendment to section 89.002(a)(2)—once an operator accepts plugging responsibility, it retains such responsibility until "the operator transfers the well to an entity recognized by the Railroad Commission as an entity with sufficient financial security." *See* Sen. Comm. on Natural Resources, Bill Analysis, Tex. S.B. 638, 75th Leg., R.S. (1997).

Shoreham argues that even if a Form P-4 filed for a purpose other than designating the well's operator can result in the imposition of post-1997 statutory responsibility for plugging costs, the State did not introduce sufficient evidence that Shoreham's 2000 P-4 was a form "approved by the commission." *See* Tex. Nat. Res. Code Ann. § 89.002(a)(2) (assumption of responsibility for the physical operation and control of a well is shown by "a form the person files

with the commission and the commission approves").[2] However, the 2000 P-4 on its face indicates that the Commission approved Shoreham's filing. The Form P-4 has an area specifically designated for Commission approval. This area on the 2000 P-4 in question is initialed as "Approved" and dated "10-4-00." This is evidence that the Commission approved the form, and it was uncontroverted by Shoreham. We, therefore, find the summary judgment evidence sufficient as to the Commission's approval of the 2000 P-4.

Next, Shoreham argues that the State's evidence and responses to discovery referencing the 1996 P-4 act as an admission against interest and a waiver of the State's ability to rely on the 2000 P-4 to establish Shoreham's plugging liability. However, neither of the statements made by the State that Shoreham relies on for this argument is inconsistent with the State's reliance on the 2000 P-4 to establish Shoreham's liability. In an affidavit attached to the State's motion for partial summary judgment, a district director of the Commission stated that Shoreham "became the operator of record on April 30, 1996." This is a statement of historical fact and is not inconsistent with the State's reliance on the 2000 P-4 to establish post-1997 operator status. Shoreham initially became the operator by filing the 1996 P-4, but formally acknowledged its continued status as the operator of the Well on the later 2000 P-4. In the State's responses to interrogatories, the State referenced the 1996 P-4 as documentation supporting its position "as to who was the operator of [the] Well." This is not inconsistent with the State's reliance on the 2000 P-4 for the purpose of establishing post-1997 operator status. The 1996 P-4 identified Shoreham as the

_____

[2] Shoreham's president admitted by affidavit that Shoreham filed the 2000 P-4 with the Commission.

9

operator. The 2000 P-4 did the same thing, but was also relevant—due to the amendment of section 89.002(a)(2)—in answering the additional question of whether Shoreham was liable for plugging expenses as operator regardless of whether it was in actual "physical operation and control" of the Well. The State's introduction of the 2000 P-4 to establish Shoreham's responsibility for plugging costs did not, therefore, render the State's response to the interrogatory incorrect or incomplete and, thus, did not preclude the State's reliance on the 2000 P-4 for such purpose.

We conclude that the 2000 P-4 establishes Shoreham's operator status for purposes of determining whether Shoreham is liable for the plugging expenses incurred by the State. Under the natural resources code, Shoreham as operator was responsible for the plugging of the Well.

> The duty of a person to plug an unplugged well that has ceased operation ends only if the person's interest in the well is sold or conveyed while the well is in compliance with rules of the commission relating to safety or the prevention or control of pollution and the provisions of Sections 89.002(a)(2)(A)-(D) have been met.

*Id.* § 89.011(e). The Commission's regulations are to the same effect: "The entity designated as the operator of a well specifically identified on the most recent Commission-approved operator designation form filed on or after September 1, 1997, is responsible for properly plugging the well . . . ." 16 Tex. Admin. Code § 3.14(c)(1). As the party responsible for plugging the Well, Shoreham was liable for the reasonable costs of plugging the Well incurred by the State.[3] *See* Tex. Nat. Res. Code Ann. §§ 89.043, .083; 16 Tex. Admin. Code § 3.14(b)(5).

---

[3] Based on our analysis, in addition to finding that the State's motion for partial summary judgment was properly granted, we find that Shoreham's motion for clarification of the partial summary judgment (which requested the district court to re-visit the issue) was properly denied, and that the district court's refusal to allow Shoreham to introduce evidence, argue to the jury, and present a jury issue on Shoreham's physical operation and control of the Well was proper.

10

*Conclusion*

The district court did not err in ruling that Shoreham Oil & Gas Company, Inc. was the operator responsible for the reasonable plugging expenses incurred by the State as a matter of law. We affirm the judgment of the district court.

_____

G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed:   July 25, 2008