

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00514-CV

**IN THE ESTATE OF** Consuella Perkins **ULBRICH**, Deceased

From the Probate Court No. 2, Bexar County, Texas
Trial Court No. 2011-PC-0686
Honorable Tom Rickhoff, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:          Catherine Stone, Chief Justice
                  Karen Angelini, Justice
                  Rebeca C. Martinez, Justice

Delivered and Filed:  January 15, 2014

REVERSED AND REMANDED; MOTION FOR REHEARING GRANTED

On September 18, 2013, we issued an opinion affirming the probate court's judgment in part, reversing the probate court's judgment in part, and remanding the cause to the probate court. *See Estate of Ulbrich*, No. 04-12-00514-CV, 2013 WL 5297161 (Tex. App.—San Antonio Sept. 18, 2013). Appellant then filed a motion for rehearing. After requesting a response, we grant appellant's motion for rehearing, withdraw our prior opinion and judgment, and substitute this opinion and judgment in their place.

This is an appeal from an order awarding exempt property for the surviving spouse pursuant to section 271 of the Probate Code. Douglas J. Ulbrich, the surviving spouse, appeals from the order. On appeal, he argues that (1) the probate court erroneously determined that res judicata and collateral estoppel applied to this case; (2) the probate court "erroneously denied [his]

application to designate his rural homestead as his probate homestead" pursuant to section 271; (3) the probate court "erroneously denied [his] application to set aside exempt property including homestead and exempt personal property for his use and benefit as surviving spouse pursuant to" section 271; and (4) there is insufficient evidence to support the probate court's finding that his San Antonio home is his probate homestead pursuant to section 271. We reverse and remand.

## BACKGROUND

Consuella Perkins Ulbrich died intestate on August 22, 2010, survived by her husband, Douglas J. Ulbrich, and her adult children from a previous marriage ("the heirs"). At the time of Consuella's death, she and Douglas owned 160 acres in Medina County and a home in San Antonio, Texas. The administrator of Consuella's estate filed the underlying probate action in Medina County, Texas. However, the Medina County court transferred the case to Bexar County. On January 17, 2012, Douglas then filed in Bexar County probate court an "Application and Verified Affidavit of Douglas J. Ulbrich, Surviving Spouse, to Set Aside Exempt Property Including Homestead and Separate Property Pursuant to Texas Probate Code Section 271." In his application, Douglas requested that the probate court set aside the Medina County ranch, "his rural homestead," as exempt property for his use and benefit. He also requested the following personal property be set aside as exempt property for his use and benefit:

(1) home furnishings including family heirlooms;
(2) provisions for consumption;
(3) farming and ranching vehicles and implements;
(4) tools, equipment, books and apparatus used in a trade or profession;
(5) wearing apparel;
(6) jewelry not to exceed 25% of the aggregate limitations prescribed by section 42.001(a);
(7) two firearms;
(8) athletic and sporting equipment including bicycles;
(9) his 2001 Ford van;
(10)   the following animals and forage on hand for their consumption:
    (A) two horses, mules or donkeys, and a saddle, blanket and bridle for each;
    (B) 12 head of cattle;

      (C) 60 head of other types of livestock including goats and deer; and
      (D) 120 fowl; and
(11)    household pets.

Douglas also claimed as exempt property (1) survivor benefits and rights in funds on deposit in joint bank accounts; (2) items in his safe deposit box; and (3) his seven-tenths undivided interest in a house located in Hondo, Texas. Douglas set the application for a hearing.

On February 3, 2012, the probate court held the hearing, and Douglas's counsel told the court the "purpose of the hearing today is to consider Mr. Ulbrich's application and verified affidavit as surviving spouse to set aside exempt property including the homestead and separate property pursuant to the Texas Probate Code section 271." Counsel for the heirs then informed the probate court that "we'd like to invoke the rule when taking testimony." The probate court asked, "Okay. And are we going to take testimony?" When counsel replied, "Possibly," the probate court replied, "Well, let's talk about it first." Then, instead of taking testimony, the probate court merely questioned Douglas's counsel and the heirs' counsel, and the respective lawyers presented arguments to the court:

> Court: Okay. So Starhill [the San Antonio residence] had a – it was purchased during the marriage, right?
>
> Counsel for Douglas: Yes, Your Honor.
>
> Court: Okay. And there was a homestead exemption attached to it at some time, right?
>
> Counsel for Douglas: For tax purposes.
>
> Court: Okay. Well, for whatever purpose. And then he claimed that as his homestead in some kind of proceeding up in Medina County. Or did he?
>
> Counsel for Douglas: I wasn't at the hearing, but I have seen an excerpt from the transcript where he was asked by Ms. Arlitt if the house in San Antonio on Starhill was his homestead and he said yes.

Court: Well, it doesn't matter what he said. Was it his homestead or wasn't it his homestead? How long – since 07 was it declared a homestead or what? Was it ever declared a homestead?

Counsel for Douglas: It was not declared a homestead by affidavit or filing any designation of homestead in the deed records. He told the tax office he wanted to claim the San Antonio house as his homestead for tax purposes.

The probate court continued to ask questions of Douglas's counsel about the ranch in Medina County. The following then occurred:

Court: Okay. Let me get that straight. His wife passes in 2010.

Counsel for Douglas: Yes.

Court: How long were they married?

Counsel for Douglas: How long were you married?

Douglas: 45 years.

Court: I was going to say, it must be a long time. So all these kids she represents are older than 45?

Counsel for Douglas: I believe they're in their 50s and 60s.

Court: Well, they'd have to be.

Douglas: They're my step-children.

Court: Yes, I got that. Okay. All right. Okay. So he inherits 80 acres in '79 from his parents. Okay. So sometimes that's separate property if you leave it alone and don't muck with it too much. And then he gets – when did he get the rest of it?

Counsel for Douglas: At the same time.

Court: Oh, he did.

Counsel for Douglas: Yeah. He bought it from his siblings.

Court: Oh, he buys it?

Counsel for Douglas: Yeah.

Court: He buys it from his siblings. How long was he married when he bought it from his siblings?

Counsel for Douglas: What year were you married?

Douglas: '66, I think.

Counsel for Douglas: He was married in '66, so about 13 years he had been married when he bought the other 80 acres of the ranch from the siblings.

Court: Can he trace separate property money to buy the other 80 acres?

Counsel for Douglas: No.

Court: Okay. There's no trace.

Counsel for Douglas: There's no denial that 80 acres of the ranch was community property during the marriage.

Court: Oh, okay. Well, that straightens it out. Okay. What do you want to see happen today?

Counsel for Douglas: I would like to see the court rule that Mr. Ulbrich has the right to designate his rural homestead as the probate homestead.

Court: The Bexar County homestead?

Counsel for Douglas: No, Medina County homestead. His rural homestead, the 160 acre ranch.

Court: Why would I get involved in Medina County property?

Counsel for Douglas: Because you have jurisdiction over the parties and the estate. And Mr. Ulbrich filed a designation of homestead in Medina County in April of last year. And then he filed an affidavit this last month designating his 160 acre Medina County homestead as his rural homestead. And we want the court to recognize that that designation is effective as to his right to claim a life estate in the homestead that he and his wife had designated previously and that he was free to choose to designate after her death.

The heirs' counsel responded that while the Ulbrichs had a residence at their Medina County ranch,

they "had always homesteaded at the home here in San Antonio."

Court: Now is that something official that was sent to authorities and everything? The homestead in San Antonio?

Counsel for heirs: Yes. That was filed [at the] Bexar County Appraisal District, and Mr. and Mrs. Ulbrich designated the house on Starhill in San Antonio for many years, took full tax advantage –

- 5 -

Court: Okay. Fine.

Counsel for heirs: -- took all the advantages.

Court: And now he wants the ranch in Medina County.

Counsel for heirs: And it –

Court: And how does that affect your people?

Counsel for heirs: It affects our people because – they would like to settle up the estate. There were – there's 160 acres total in Medina County at the ranch. 80 acres, I don't think anyone contests that the first 80 acres was inherited by the Ulbrichs from his family.

Court: Okay. And is that – I mean we know which 80 acres that is?

Counsel for heirs: We don't know that yet.

Court: You will.

The court continued its questioning and eventually asked Douglas's counsel if he could have Douglas "draw me the first 80 [acres] and the second 80 [acres on here]." As the court was looking at a plat of the ranch, the reporter's record of the hearing abruptly concludes with the probate court stating, "Here, let's stay off the record."

On February 13, 2012, the probate court signed the following order:

**PARTIAL ORDER ON DOUGLAS J. ULBRICH'S APPLICATION AND VERIFIED AFFIDAVIT OF DOUGLAS J. ULBRICH, SURVIVING SPOUSE, TO SET ASIDE EXEMPT PROPERTY INCLUDING HOMESTEAD AND SEPARATE PROPERTY PURSUANT TO TEXAS PROBATE CODE SECTION 271**

CAME TO BE HEARD on the 3rd day of February 2012, Douglas J. Ulbrich's Application and Verified Affidavit of Douglas J. Ulbrich, Surviving Spouse, to Set Aside Exempt Property Including Homestead and Separate Property Pursuant to Texas Probate Code Section 271, and after hearing the arguments of counsel and reviewing the evidence presented, in part, the Court:

FINDS that Consuella Perkins Ulbrich, deceased, died on August 22, 2010.

FINDS that at the time of her death, Consuella Perkins Ulbrich, deceased, was married to Douglas J. Ulbrich.

FINDS that at the time of her death, Consuella Perkins Ulbrich, deceased, did not have any minor children.

ADJUDGES, DECREES AND ORDERS that on August 22, 2010, the homestead of Douglas J. Ulbrich and Consuella Perkins Ulbrich, deceased, was 3939 Starhill, San Antonio, Bexar County, Texas.

Douglas did not appeal from this order. Instead, on February 14, 2012, he filed a "Motion to Set a Hearing on Application and Verified Affidavit of Douglas J. Ulbrich, Surviving Spouse, to Set Aside Exempt Property Including Homestead and Separate Property, Pursuant to Texas Probate Code Section 271." On February 17, 2012, he filed an amended motion and set the matter for a hearing. On March 2, 2012, the probate court held another hearing. Douglas's counsel told the probate court they were ready to proceed and "Mr. Ulbrich is here to offer evidence." The probate court then asked, "[D]idn't we have this hearing before?" Douglas's counsel responded, "We set the hearing about three weeks ago, but we didn't introduce any evidence." Again, the probate court asked counsel questions, and the attorneys presented argument. At the end of the twelve page reporter's record, the probate court states that he is "going to let the order stand."

On March 12, 2012, Douglas filed a "Motion to Reconsider Entry of Partial Order and to Enter Final Order on Application and Verified Affidavit of Douglas J. Ulbrich, Surviving Spouse, to Set Aside Exempt Property Including Homestead and Separate Property Pursuant to Texas Probate Code Section 271" and set the matter for a hearing. He also filed a jury demand with regard to his application. On March 20, 2012, the probate court held another hearing:

> Counsel for Douglas: [W]e're here on a motion to reconsider your partial order that was issued stating that the homestead at the time that Ms. Ulbrich died was the San Antonio residence. After the last hearing we had, I filed a jury demand, paid a jury fee, set jury trial.
>
> Court: For what?
>
> Counsel for Douglas: For June 18th.
>
> Court: For what?

> Counsel for Douglas: To decide what the exempt property was and also to decide the other things that were not decided by your partial order. And namely to establish where Mr. Ulbrich's probate homestead is going to be. And looking at your partial order, Judge, I can't see where it is a final appealable order. If it was a final order on the issue of setting aside exempt property and designating the probate homestead it could be appealed, but since you titled it a partial order –

The probate court then took a short break, after which discussions continued off the record until the court recessed the proceedings.

On March 22, 2012, Douglas's counsel filed an "Amended Application and Verified Affidavit of Douglas J. Ulbrich, Surviving Spouse, to Set Aside Exempt Property Including Homestead and Personal Property Pursuant to Texas Probate Code Sections 271 & 272" and set the matter for a hearing. On April 26, 2012, the probate court held another hearing. Counsel for Douglas told the probate court,

> We're ready to proceed on the amended motion. Let's see – I believe it – okay. It's a motion to reconsider entry of partial order and to enter final order on application and verified affidavit of Douglas Ulrich, surviving spouse, to set aside exempt property including homestead and separate property pursuant to the Texas Probate Code Section 271.

The probate court then questioned whether the court had already decided the matter. When Douglas's counsel replied that the court had not, the probate court stated, "I thought we made as good a record as we could, and I said take it up to the Fourth Court, let them--" Douglas's counsel interrupted,

> Our position, Your Honor, is that there is no record that – you haven't ruled on the motion. You did file and sign a partial order deciding that the property in San Antonio was the homestead at the time of Mrs. Ulbrich's death. But my position is that that doesn't either grant or deny the pending motion to set aside exempt property pursuant to section 271.

The probate court replied, "Okay. Well, anyway, try and make a good record and take it up there if you want and get it done." After discussions with counsel about the case, the following occurred:

> Court: Here, let me do this. Didn't [Douglas] already fully testify about this homestead thing?

Counsel for Douglas: He hasn't testified at all. He submitted an affidavit and verified –

Counsel for heirs: You've already taken testimony from him, Your Honor.

Court: We haven't? We have or haven't?

Counsel for heirs: You took it here. They took it down in Hondo and then took it here. You've already had him on the stand.

Court: I had him on the stand here.

Counsel for heirs: Already done that.

Counsel for Douglas: I don't believe so, Your Honor. He hasn't testified about these issues.

Counsel for heirs: Before –

Court: Here, wait. We will have –

Counsel for heirs: -- before you ruled.

(Discussion off the record)

Counsel for Douglas: He may have sat right there but it wasn't testimony on the amended motions.[1]

Court: Well, you keep filing amended motions after I have already fully ruled. But I just want you to have a clear record. In case you're right about it being an appealable order, you can appeal it. That's why we have the Fourth Court. Okay.

On July 30, 2012, the heirs filed "Affirmative Defenses: Claims of Res Judicata and Collateral Estoppel," arguing that the probate court signed a final judgment with respect to homestead in February and that Douglas did not appeal from that order. Thus, the heirs claimed "res judicata and collateral estoppel [applied] to the issue and claim of the location of the homestead" at the time of Consuella's death. On July 31, 2012, the probate court held another hearing, stating that there had already been "three hearings, and I ruled the same way every time."

---

[1] The reporter's record reflects that Douglas did not testify under oath on the witness stand and, indeed, no witness testified under oath before the Bexar County probate court at this point in the proceedings.

Douglas's counsel argued that the February order was not a final, appealable order. After hearing argument of counsel, the probate court stated that res judicata applied.

On August 6, 2012, Douglas filed a "Motion to Enter Order on Motion to Reconsider Entry of Partial Order and to Enter Final Order on Application and Verified Affidavit of Douglas J. Ulbrich, Surviving Spouse, to Set Aside Exempt Property Including Homestead and Separate Property Pursuant to Texas Probate Code Section 271" and set the matter for a hearing. On August 10, 2012, the probate court again held a hearing. At the beginning of the hearing, the probate court stated, "Wait a minute. I've got this February 13th order. And it says, orders that on August 22, 2010, the homestead of Ulbrich, deceased, and you know, Consuella, was 3939. I mean, I said it. How many times do I [have] to say it?" Douglas's counsel again argued that the February 13, 2012, order was not an appealable order. The parties then discussed which personal property should be exempt. One of the adult children, Debra K. Byrd, testified that five vehicles owned by Douglas and Consuella were purchased after their marriage. She also testified about the value of personal property owned by Douglas and Consuella. Douglas then testified about what he considered to be his personal separate property and what community personal property he wanted to claim as exempt for his personal use. At the end of the hearing, the parties and the probate court again discussed whether the February 13, 2012, order was a final order and whether res judicata applied as a result. That same day, August 10, 2012, the probate court signed two orders. The first one, "Order Awarding Exempt Property," stated the following:

> On August 10, 2012, came on to be heard Douglas J. Ulbrich's Application and Verified Affidavit of Douglas J. Ulbrich, Surviving Spouse, to Set Aside Exempt Property Including Homestead and Separate Property Pursuant to Texas Probate Code Section 271, and premises considered, the Court:

*The Homestead:*

ORDERS that the homestead located at 3939 Starhill, San Antonio, Texas shall be set aside for the benefit of Douglas J. Ulbrich as the surviving spouse homestead.

FURTHER ORDERS that Douglas J. Ulbrich shall maintain the homestead to include paying costs of taxes, insurance, and maintenance of the homestead as long as he retains the homestead.

*Exempt Property:*

FINDS that the personal property of the Estate is exempt;

ORDERS that the exempt personal property of the Estate shall be awarded as follows:

   a. Douglas J. Ulbrich is awarded the list of exempt personal property shown on Exhibit "A" attached hereto; and
   b. The Heirs, Robert Hope, Darlene Wilson, and Debra Byrd are awarded the personal property shown on Exhibit "B" attached hereto.

FURTHER ORDERS that all exempt personal property shown on Exhibit "B" shall be made available for pick-up by the Heirs within twenty-four hours of signing of this Order.

FURTHER ORDERS that all exempt personal property shown on Exhibit "B" shall not be destroyed, damaged or in any way tampered with prior to pick-up by the Heirs, Robert Hope, Darlene Wilson, and Debra Byrd.

FURTHER ORDERS the cost of packing and pick-up of the exempt personal property on Exhibit "B" shall be borne by the Heirs, Robert Hope, Darlene Wilson, and Debra Byrd.

The probate court also signed an Order Finding Res Judicata and Collateral Estoppel Apply. In that order, the probate court found the following:

   1. The "issue of the location of the homestead of Consuella Perkins Ulbrich, deceased, at the time of Decedent's death was fully and fairly litigated [at the hearing] on February 3, 2012."
   2. The parties "litigated the location of Decedent's homestead on February 3, 2012, as adversaries."
   3. The "issue of the location of Decedent's homestead was determined and the court entered its final, appealable order finding the location of the homestead of Decedent to be 3939 Starhill, San Antonio, on February 13, 2012."

4. Douglas J. Ulbrich "did not appeal from the court's order dated February 13, 2012."
5. The court order "dated February 13, 2012, is final and no longer appealable."
6. The affirmative defenses of res judicata and collateral estoppel "apply to the court's order dated February 13, 2012, and the court's specific finding that 3939 Starhill, San Antonio, Texas, was the homestead of Consuella Perkins Ulbrich, deceased, at the time of Decedent's death."

Douglas then filed a notice of appeal.

## HOMESTEAD

Before the inventory, appraisement, and list of claims is approved or before the filing of the affidavit in lieu of the inventory, appraisement, and list of claims, a surviving spouse may apply to the probate court pursuant to section 271(b) of the Probate Code "to have exempt property, including the homestead, set aside by filing an application and a verified affidavit listing all the property that the applicant claims is exempt." *See* TEX. PROB. CODE ANN. § 271(b) (West Supp. 2012).[2] An applicant under section 271(b) "bears the burden of proof by a preponderance of the evidence at any hearing on the application." *Id.* § 271(c). The probate court "shall set aside property of the decedent's estate that the court finds is exempt." *Id.*

On appeal, Douglas argues that the evidence is factually insufficient to show that the Starhill home was his and Consuella's homestead at the time of her death and that the "great weight and preponderance of the evidence shows that his Medina County ranch should be set aside as his probate homestead." The heirs counter that the issue of homestead was decided in the probate court's February 13, 2012, order from which Douglas did not appeal and thus the probate court correctly determined that res judicata and collateral estoppel apply. Douglas responds that the

---

[2] Effective January 1, 2014, the Texas Probate Code is repealed and recodified in the Texas Estates Code. *See* Acts 2009, 81st Leg., ch. 680 § 1 et seq.; Acts 2011, 82nd Leg., ch. 823, § 1 et seq.; Acts 2011, 82nd Leg., ch. 1338, § 1 et seq. The new codification is "without substantive change" and its purpose is to make the law "more accessible and understandable." *See* TEX. EST. CODE ANN. § 21.001. Section 271 is now codified in section 353.051 of the Texas Estates Code.

February 13, 2012, order was not an appealable order because the probate court did not grant or deny his entire application pursuant to section 271, as there were still personal property issues remaining. Thus, we must first determine whether the February 13, 2012, order was an appealable order from which Douglas should have appealed.

Generally, appeals may be taken only from final judgments. *De Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex. 2006). "Probate proceedings are an exception to the 'one final judgment' rule; in such cases 'multiple judgments final for purposes of appeal can be rendered on certain discrete issues." *Id.* (quoting *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192 (Tex. 2001)). "The need to review controlling, intermediate decisions before an error can harm later phases of the proceeding has been held to justify this rule." *Id.* (quotations omitted). "Not every interlocutory order in a probate case is appealable, however, and determining whether an otherwise interlocutory probate order is final enough to qualify for appeal, has proved difficult." *Id.* "In the past, courts relied on a 'substantial right' test to determine whether an ostensibly interlocutory probate order had sufficient attributes of finality to confer appellate jurisdiction." *Id.* Under that test, "once the probate court adjudicated a 'substantial right,' the order was appealable." *Id.* In 1995, the supreme court attempted to clarify this test, noting that "while adjudication of a 'substantial right' was one factor to be considered, equally important" was "earlier precedent requiring that the order dispose of all issues in the phase of the proceeding for which it was brought." *Id.* Therefore, "[t]o sidestep 'potential confusion' about the appropriate test for jurisdiction," the court adopted the following test:

> If there is an express statute, such as the one for complete heirship judgment, declaring the phase of the probate proceedings to be final and appealable, that statute controls. Otherwise, if there is a proceeding of which the order in question may logically be considered a part, but one or more pleadings are also part of that

proceeding raise issues or parties not disposed of, then the probate order is interlocutory.

*Id.*

In *De Ayala v. Mackie*, 193 S.W.3d at 578, the supreme court held that the trial court's order denying a plea to the jurisdiction and refusal to remove an executor was not appealable. The court explained that "an order denying a motion to dismiss an entire proceeding for want of subject-matter jurisdiction is more like a prelude than a finale." *Id.* "It certainly does not dispose of a claim that, if asserted independently, would be the proper subject of a lawsuit." *Id.* Moreover, the supreme court explained that "the trial court's order was interlocutory because it did not dispose of all parties or issues in a particular phase of the proceedings." *Id.* at 579. "Because an order denying a plea to the jurisdiction and refusing to remove an executor does not end a phase of the proceedings, but sets the stage for the resolution of all proceedings, the order is interlocutory." *Id.*

In support of their arguments, both parties cite *Majeski v. Estate of Majeski*, 163 S.W.3d 102 (Tex. App.—Austin 2005, no pet.). In *Majeski*, the decedent's adult daughter and surviving spouse had a dispute over a tract of land owned by the decedent before her marriage and on which she and her spouse lived and worked. *Id.* at 104. The decedent's surviving spouse claimed a homestead right, while her adult daughter argued that the rental of portions of the property defeated the spouse's homestead rights. *Id.* After an inventory of the estate was filed, the surviving spouse, claiming a life estate in the property as the decedent's surviving spouse, sought a judgment declaring the tract of land, including any improvements, rental properties and business on the tract of land, to be his homestead. *Id.* at 105. The decedent's adult daughter countered, asking the court to determine what portion of the property was the surviving spouse's homestead, and also asking the court to declare "the value and character of all items of personal property" and what assets should be given to the spouse as the decedent's surviving spouse. *Id.* She also asked the court to

deduct from the spouse's share of the estate "the value of all assets not accounted for which were in his possession." *Id.* Both sides then moved for summary judgment on the issue of the homestead status of the property. *Id.* The trial court granted summary judgment in the adult daughter's favor, finding that the surviving spouse's homestead did not consist of the entire tract of land, but only a portion of the land. *Id.* The surviving spouse appealed, and the adult daughter argued that the trial court's order was interlocutory and not an appealable order. *Id.* The adult daughter emphasized that the trial court's order was not appealable because it did not address the requests in her counter-petition relating to the other assets held by the surviving spouse. *Id.* The court of appeals disagreed, explaining that the "only dispute at issue at this stage of the probate proceeding was the homestead status of the property." *Id.* at 106. According to the court, although the adult daughter "asserted claims related to other assets, those questions were separate from the homestead issue." *Id.* Because the "trial court's order made a final resolution of the homestead issue as to the entire tract of land," the court held that the order "concluded a discrete phase" of the proceedings, and was final and appealable. *Id.*

The heirs cite *Majeski* for the proposition that a trial court's order with regard to a property's homestead status is an appealable order even though other property issues remain undecided. However, this case is distinguishable from the facts in *Majeski*. In *Majeski*, the surviving spouse filed his application pursuant to section 271 of the Probate Code in an effort to exempt the tract of land as his homestead. *Id.* at 105. He did not also in his section 271 application seek personal property to be exempt. *See id.* Instead, it was the adult daughter who filed a counterclaim asking the court to declare "the value and character of all items of personal property" and what assets should be given to the spouse as the decedent's surviving spouse, and to deduct from the spouse's share of the estate "the value of all assets not accounted for which were in his

possession." *Id.* Thus, in *Majeski*, the only dispute at issue with regard to the surviving spouse's section 271 application was the homestead status of the property. *See id.* at 106.

Here, however, Douglas sought to exempt both his homestead *and* personal property pursuant to section 271. Section 271(b) allows a surviving spouse to apply to the probate court "to have *exempt property, including the homestead,* set aside by filing an application." TEX. PROB. CODE ANN. § 271(b) (West Supp. 2012) (emphasis added). Thus, when the probate court ruled on the homestead issue, it decided only part of Douglas's section 271 application to have property set aside as exempt. For that reason, the probate court called its February 13, 2012, order a "partial" order. As the probate court did not rule on Douglas's entire application pursuant to section 271, its February 13, 2012, order did not conclude a discrete phase of the proceedings and was not appealable. *See De Ayala*, 193 S.W.3d at 578-79. And, as the February 13, 2012, order was not an appealable order, the probate court erroneously concluded that res judicata and collateral estoppel applied to that order. We therefore reverse and vacate the probate court's Order Finding Res Judicata and Collateral Estoppel Apply.

Having determined that res judicata and collateral estoppel do not apply, we must now address Douglas's issues pertaining to homestead. Here, it is apparent the probate court declined Douglas's request to designate the Medina County ranch as the surviving spouse's homestead. Instead, the probate court designated the Ulbrichs' San Antonio residence as the surviving spouse's homestead. On appeal, Douglas argues that the probate court erred in failing to designate his Medina County ranch as his homestead. He further argues that there is no evidence to support the probate court's finding that his San Antonio home was his homestead. We review a trial court's finding of fact for legal and factual sufficiency. *See Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *Estate of Cantu*, No. 04-11-00229-CV, 2012 WL 2336248, at *1 (Tex. App.—San Antonio June 20, 2012, no pet.). Here, although there were numerous discussions and

arguments regarding the homestead issue at the hearings that took place prior to the August hearing, the record fails to show there was ever any sworn testimony or documentary evidence presented on the homestead issue. And, at the August hearing, the only evidence presented was the testimony of Douglas and one of the decedent's adult children regarding personal property owned by the Ulbrichs. Thus, there was no evidence presented at any hearing in this case on the issue of homestead. And, because there was no evidence presented on the issue of homestead, there is no evidence to support the probate court's finding that the San Antonio home should be set aside as Douglas's homestead.[3] We therefore reverse the probate court's order to the extent that it designates and sets aside the San Antonio home as Douglas's homestead, and remand the cause for the probate court to rule on Douglas's section 271 application regarding homestead.

Douglas also complains of the probate court's order awarding exempt personal property of the estate. The "Order Awarding Exempt Property," states that the court:

FINDS that the personal property of the Estate is exempt;

ORDERS that the exempt personal property of the Estate shall be awarded as follows:

a.   [Douglas] is awarded the list of exempt personal property shown on Exhibit "A" attached hereto; and

---

[3] Although the attorneys and the probate court discussed the case at the February 3, 2012, hearing, such discussions are not evidence in this case. *See generally Banda v. Garcia*, 955 S.W.2d 270 (Tex. 1997). Both parties in their briefs also cite to affidavits attached to pleadings filed in this case in support of their factual assertions. However, these affidavits were not introduced as evidence at trial. Finally, in support of factual assertions made in his brief, Douglas cites to a formal bill of exceptions he filed on September 24, 2012, which was after the final hearing on August 10, 2012. *See* TEX. R. APP. P. 33.2. In his formal bill of exceptions, he claimed that the probate court prevented him from entering additional evidence into the record "at the hearing on August 22, 2012, when the court denied his request to testify and offer documentary evidence on his motion to reconsider the court's order dated August 10, 2012, awarding certain exempt property." That is, Douglas did not argue that he was prevented from submitting evidence *at trial*. Instead, in his formal bill of exceptions he argued that the probate court "prevented him from offering relevant evidence in support of his motion to reconsider the Order dated August 10, 2012." Thus, in support of the factual assertions made in his brief, Douglas improperly cites to the documents, photographs, and video attached to his formal bill of exceptions. The primary purpose of a bill of exception is to include excluded evidence in the record so that an appellate court can determine whether the trial court *erred in excluding it*. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006). Douglas makes no complaint in his brief that the probate court erred in excluding any particular evidence. Thus, the formal bill of exceptions is not relevant to any issue brought by Douglas in this appeal.

b. [The heirs], are awarded the personal property shown on Exhibit "B" attached hereto.

Douglas contends that section 271 of the Probate Code requires the probate court to set aside the exempt property of the estate to him. Section 271 provides that the court shall order to be set apart all personal property of the estate "that is exempt from execution or forced sale by the constitution and laws of this state for the use and benefit of the surviving spouse." TEX. PROB. CODE ANN. § 271(a)(2) (West Supp. 2012). Further, section 278 provides that once the estate is finally settled, and the estate is solvent, the exempted personal property shall be subject to partition and distribution as the other property of the estate. *See id.* § 278 (West 2003).[4] "Thus, a surviving spouse can retain possession of tangible exempt property under the 'use and benefit' provision of section 271, but when the administration terminates, the decedent's interest in these items must pass to the decedent's heirs or devisees." *Estate of Rhea*, 257 S.W.3d 787, 793 (Tex. App.—Fort Worth 2008, no pet.); *see also Bolton v. Bolton*, 977 S.W.2d 157, 159 (Tex. App.—Tyler 1998, no pet.) (holding the "use and benefit" provision does not allow a transfer of fee simple title of the exempt property to the surviving spouse because once the estate is finally settled, the exempt property is subject to partition and distribution as the other property of the estate).

Here, it appears the probate court made a finding that the personal property of the estate was exempt but, instead of setting it apart for Douglas's use and benefit as required by section 271 of the Probate Code, the court *awarded* some items to Douglas and some to the heirs. An award of personal property, however, was premature as there had not been a final settlement of the estate at the time of the section 271 hearing. Accordingly, we hold the probate court erred in its award of exempt personal property, and reverse and remand the award of personal property for further proceedings.

---

[4] Section 278 is now codified in section 353.152 of the Texas Estates Code.

**CONCLUSION**

Because the February 13, 2012 order was not an appealable order, we reverse and vacate the probate court's Order Finding Res Judicata and Collateral Estoppel Apply. And, because (1) there was no evidence to support the probate court's finding that the San Antonio residence should be set aside as Douglas's homestead and (2) the probate court erred in awarding exempt personal property, we reverse the probate court's Order Awarding Exempt Property and remand the cause for further proceedings consistent with this opinion.

Karen Angelini, Justice